## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA GRAY and HEATHER AGE, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE HAIN CELESTIAL GROUP, INC.; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 2:21-cv-1569 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Lisa Gray and Heather Age ("Plaintiffs"), on behalf of themselves and the Class and Subclasses of all others similarly situated, bring this class action against Defendant The Hain Celestial Group, Inc. ("Hain" or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of its baby food products, which contain levels of toxic heavy metals.

### NATURE OF ACTION

1.     This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food products it sells are, among various things, natural, organic, grown without potentially harmful pesticides or herbicides, and free from artificial flavors, colors and preservatives.

2.     Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"),

revealing its findings that numerous baby foods, including those manufactured by Defendant Hain, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[1]

3.    Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

4.    Defendant Hain knew that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that it ensures the ingredients it procures for its products do not use potentially harmful pesticides or fertilizers, and uses a rigorous quality assurance process to meet the strict standards for organic certification.[2] Yet Defendant Hain chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiffs and members of the Classes that purchased these products in reliance on Hain's representations.

5.    Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled baby food products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

---

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report").
[2] *Earth's Best, Our Promise*, https://www.earthsbest.com/why-earths-best/our-promise/

## THE PARTIES

6.    Plaintiff Lisa Gray ("Plaintiff Gray") is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff Gray purchased Hain's Earth's Best Peanut Butter Puffs.

7.    Plaintiff Heather Age ("Plaintiff Age") is a citizen of the State of Kentucky and is a member of the Nationwide Class and the Kentucky Subclass. Plaintiff Age purchased Hain's Earth's Best Baby Food Jars in the flavors Carrots, Peas, Corn, Apple & Blueberry, and Earth's Best Whole Grain Oatmeal Cereal.

8.    Plaintiffs believed they were feeding their children healthy, nutritious foods during the time they purchased and fed their children Defendant Hain's Earth's Best baby food products. Due to the false and misleading claims and omissions by Defendant Hain as described herein, Plaintiffs were unaware that the baby food products sold by Defendant Hain contained any level of toxic heavy metals, and Plaintiffs would not have purchased the products if that information had been fully disclosed.

9.    Defendant Hain is a citizen of Delaware, where it is incorporated, and New York, where maintains its principal place of business at 111 Marcus Avenue, Lake Success, New York, 11040. Defendant Hain does business throughout the United States, and formulates, manufactures, distributes, markets, advertises, and sells baby food products online and at brick-and-mortar retail stores.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs (defined below) are citizens of

states different from Hain. Further, greater than two-thirds of the Class members reside in states other than the state in which Hain is a citizen.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) in that Defendant is a corporation that maintains its principal place of business in this jurisdiction. Further, Defendant (a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

**A.    Defendant Falsely Marketed and Advertised its Baby Food Products**

12.     Defendant Hain manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Earth's Best label. Hain makes various representations about its Products (defined below), including that they are, among various things, natural, organic, grown without potentially harmful pesticides or herbicides, and free from artificial flavors, colors and preservatives.

13.     Hain claims on its website that it has led the organic baby movement, with quality ingredients, because it believes every baby deserves an organic start in life.[3] Hain's stated purpose is "Producing pure, quality products you can trust" and further promises that it ensures that its organic foods are produced without potentially harmful chemicals, pesticides, genetically engineered ingredients, or growth hormones from animal-derived products.[4] Earth's Best repeatedly guarantees that it uses a rigorous product testing to guarantee quality and safety.[5]

---

[3] *Earth's Best*, https://www.earthsbest.com/
[4] *Earth's Best, Our Promise*, https://www.earthsbest.com/why-earths-best/our-promise/
[5] *Id.*

14.    The products at issue are various types of Hain's baby food products that contain heavy metals, including but not limited to Hain Earth's Best products purchased by Plaintiffs ("Products")[6], specifically:

- o    Earth's Best Organic Peanut Butter Puffs
- o    Earth's Best Organic Whole Grain Oatmeal Cereal
- o    Earth's Best 4+ Months (Stage 1) Baby Food Jar – Turkey & Turkey Broth
- o    Earth's Best 4+ Months (Stage 1) Baby Food Jar – Chicken & Chicken Broth
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Apples & Apricots
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Apples & Plums
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Pears & Mangos
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Sweet Potato Apricot
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Vegetable Turkey
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Sweet Potatoes
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Peach Oatmeal Banana
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Banana Mango
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Apple Butternut Squash
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Bananas Peaches & Raspberries
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Apples & Blueberries
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Corn & Butternut Squash
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Chicken & Rice
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Pears & Raspberries
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Sweet Potato Chicken
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Winter Squash
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Pears
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Bananas Carrots
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Apples
- o    Earth's Best 6+ Months (Stage 2) Baby Food Jar – Peas
- o    Earth's Best 9+ Months (Stage 3) Baby Food Jar – Tender Chicken & Stars
- o    Earth's Best 9+ Months (Stage 3) Baby Food Jar – Apple Cinnamon Oatmeal
- o    Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Apple Strawberry Baby Food Puree
- o    Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Whole Breakfast Sweet Potato Cinnamon
- o    Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Wholesome Breakfast Blueberry Banana
- o    Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Peach Mango Baby Food Puree
- o    Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Apple Peach Oatmeal Fruit and Grain Puree

---

[6] Plaintiffs reserve the right to amend this definition upon completion of discovery.

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Carrots & Broccoli Veggie Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Orange Banana Baby Food Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Butternut Squash Pear Baby Food Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Whole Breakfast Apple Raisin

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Pumpkin & Spinach Veggie Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Squash & Sweet Peas Veggie Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Sweet Potato Garbanzo Barley Veggie & Protein Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Banana Blueberry Baby Food Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Sweet Potato Apple Baby Food Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Sweet Potato & Beets Veggie Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Banana Raspberry Brown Rice Fruit and Grain Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Banana Blueberry Baby Food Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Apple Sweet Potato Pumpkin Blueberry Baby Food Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Pasta with Tomato & White Bean

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Wholesome Breakfast Banana Apricot Pumpkin with Yogurt Oat & Quinoa Baby Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Wholesome Breakfast Strawberry Peach Pear with Yogurt Oat & Quinoa Baby Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Spinach Lentil and Brown Rice Veggie & Protein Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Butternut Squash Pear Baby Food Puree

o   Earth's Best 6+ Months (Stage 2) Baby Food Pouch – Apple Sweet Potato Pumpkin Blueberry Baby Food Puree

o   Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Pear Carrot Apricot Baby Food Puree

o   Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Pumpkin Cranberry Apple Baby Food Puree

o   Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Pumpkin Cranberry Apple Baby Food Puree

o   Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Cheesy Pasta with Veggies

- o    Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Turkey Quinoa Apple Sweet Potato
- o    Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Chicken Pot Pie
- o    Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Beef Medley
- o    Earth's Best 9+ Months (Stage 3) Baby Food Pouch – Chicken Casserole

15.    Hain uses words such as "organic" and stages such as "Stage 1 (4+ months)", "Stage 2 (6+ months)", and "Stage 3 (9+ months)" to emphasize the foods suitability for consumption by infants and young children.

16.    Hain's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.    Defendant's Marketing and Advertising Misled and Deceived Consumers**

17.    Parent consumers are drawn to representations such as the ones claimed on Hain's website because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

18.    Hain's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Hain's misrepresentations caused Plaintiffs and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

19.    In light of Hain's marketing, including its commitment to providing natural and organic products that are free from artificial preservatives, colors, and flavors, Hain knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children.

Hain knew consumers purchased the Products based on the reasonable expectation that Hain manufactured the Products in a way that was proscribed by its marketing and advertising.

20. Hain intended that Plaintiffs and class members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Hain, as well as its advertising, marketing, and labeling of the Products as organic, grown without potentially harmful pesticides or herbicides, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children.

21. Based on Hain's decision to advertise, label, and market its Products as organic, grown without potentially harmful pesticides or herbicides, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children, Hain had a duty to ensure that these statements were true and not misleading. As such, Hain knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

22. However, Hain's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of its Products. Hain failed to disclose that the products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Hain intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiffs and members of the Classes to purchase the Products.

23. As a result of Hain's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

24. Hain therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

C.    **Heavy Metals**

25.    Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ("ADHD").[7] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

26.    The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[8]

27.    Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals— tested a variety of baby foods to determine the levels of heavy metals contained in their products and published the report in or around October 2019 ("Healthy Babies Bright Futures Report").[9]

28.    The Healthy Babies Bright Futures Report revealed that Hain's Whole Grain Rice Cereal contains 138 parts per billion ("ppb") of arsenic, 113 ppb of which was inorganic arsenic, 22.5 ppb of lead, 14.7 ppb of cadmium, and 2.41 ppb of mercury.[10]

29.    In addition to the Healthy Babies Bright Futures Report, as mentioned above, The Subcommittee published a report revealing findings that numerous baby foods, including those

---

[7] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("Healthy Babies Bright Futures Report").
[8] Subcommittee Report at 9.
[9] *See generally* Healthy Babies Bright Futures Report.
[10] *Id.* at 19.

manufactured by Defendant Hain, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[11]

30.    As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[12]

31.    Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[13]

**a.    <u>Arsenic</u>**

32.    Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[14] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[15]

33.    Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[16] Studies find

---

[11] Subcommittee Report at 9.
[12] *Id.*
[13] *Id.*
[14] Healthy Babies Bright Futures Report at 13.
[15] *Id.*
[16] *Id.*

lasting impacts when young children are exposed to arsenic early in life.[17] There is also no evidence that the effects of arsenic exposure are reversible.[18]

34.    The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[19] However, the Subcommittee Report shows that Hain sold finished baby food products containing as much as 129 ppb of inorganic arsenic, used ingredients testing as high as 309 ppb of arsenic, which surpasses its own internal testing standards.[20]

**b.    Cadmium**

35.    Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[21]

36.    Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[22]

37.    The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[23] However, according to the Subcommittee's findings, the test results of baby foods and

---

[17] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced, cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants.").
[18] *Id.*
[19] 21 C.F.R. § 165.110; Subcommittee report at 4.
[20] Subcommittee report at 3–4.
[21] *Id.*
[22] *Id.* at 12.
[23] *Id.* at 4.

their ingredients "eclipse those levels."[24] In fact, Hain used 102 ingredients in its baby food that tested over 20 ppb of cadmium, and some tested as high as up to 260 ppb of cadmium.[25]

### c.  <u>Lead</u>

38.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[26] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[27]

39.     According to the FDA, lead is especially dangerous to infants and young children.[28] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[29]

40.     The FDA has set the maximum allowable levels in bottle water at 5 ppb of lead.[30] However, the Subcommittee's findings reveal that Hain used ingredients containing as much as 352 ppb of lead and used many ingredients with high lead content, including 88 that tested over 20 ppb of lead and six that tested over 200 ppb of lead, which surpasses its own internal testing standards.[31]

---

[24] *Id.*
[25] *Id.* at 3.
[26] Healthy Babies Bright Futures Report at 13.
[27] Subcommittee Report at 11.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 4.
[31] *Id.* at 3–4.

    **d.**    **Mercury**

41.    Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[32] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[33]

42.    Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[34]

43.    The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[35] However, some of Hain's products include more lead than allowed in drinking water, such as Hain's Whole Grain Rice Cereal, which contained 2.41 ppb of mercury.[36]

**D.**    **Plaintiffs and Class Members' Reliance was Reasonable**

44.    Plaintiffs and Class Members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

45.    Plaintiffs and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiffs and Class Members known Hain's Products actually contained high levels of heavy metals, and Hain omitted this fact from its packaging, Plaintiffs and Class Members would not have purchased the Products.

46.    A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiffs and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were organic, free from

---

[32] Healthy Babies Bright Futures Report at 17.
[33] Subcommittee Report at 12.
[34] *Id.* at 12–13.
[35] *Id.* at 4.
[36] *Id.* at 3.

artificial flavors, colors and preservatives, safe for consumption by infants and young children, and did not contain levels of toxic heavy metals.

## CLASS ACTION ALLEGATIONS

47.    Plaintiffs bring this action individually and on behalf of all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Classes:

### Nationwide Class

All persons within the United States who purchased the Earth's Best Organic Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

### Florida Subclass

All persons within the State of Florida who purchased the Earth's Best Organic Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

### Kentucky Subclass

All persons within the State of Kentucky who purchased the Earth's Best Organic Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

48.    Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

49.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or add subclasses before the Court determines whether certification is appropriate.

14

50.     **Numerosity**: The proposed Class and Subclass are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States, directly and by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

51.     **Common Questions Predominate**: There are questions of law and fact common to the proposed Class and Subclasses that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

    a.     Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

    b.     Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

    c.     Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

    d.     Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

    e.     Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

f.      Whether Defendant represents to consumers that the Products have characteristics, benefits, or qualities that they do not have;

g.      Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

h.      Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

i.      Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

52.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and members of the Classes has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children, and (b) the Products actually contain levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

53.    **Typicality**: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

54.    **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class members they seek to represent.  Plaintiffs have also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

55.    **Superiority**: The nature of this action and the nature of the laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or failed to act, on grounds generally applicable

to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
*(on behalf of the Classes)*

56.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-55, as though fully set forth herein.

57.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Hain for breach of express warranty.

58.     Hain marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Classes.

59.     Hain expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Products were and are organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children.

60.     Hain made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Products.

61.     Hain's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and members of the Classes. Plaintiffs and members of

the Classes relied on Hain's advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Hain's Products.

62.    Hain's Products do not conform to Hain's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of various heavy toxic metals.

63.    Hain was on notice of this breach, as Hain was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

64.    Privity exists because Hain expressly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were natural, and suitable for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

65.    As a direct and proximate result of Hain's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the products' marketing and advertisements.

66.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Hain's failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
#### *(on behalf of the Classes)*

67.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-55, as though fully set forth herein.

68.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Hain for breach of implied warranty of merchantability.

69.    Hain is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiffs and members of the Classes.

70.    At all times mentioned herein, Hain manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and members of the Classes, Hain impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food was organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children. Plaintiffs and members of the Classes relied on Hain's promises and affirmations of fact when they purchased the Products.

71.    Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Hain's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

72.    Hain breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

20

73.     Hain was on notice of this breach, as Hain was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

74.     Privity exists because Hain impliedly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

75.     As a direct and proximate result of Hain's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

76.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### THIRD CAUSE OF ACTION
**Fraud by Omission**
**(on behalf of the Classes)**

77.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-55, as though fully set forth herein.

78.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Hain for fraud by omission.

79.     Hain concealed from and failed to disclose to Plaintiffs and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural

or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

80.     Hain was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Hain was in a superior position to know the true state of facts about its products; (2) Hain was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Hain knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

81.     The facts concealed or not disclosed by Hain to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

82.     Plaintiffs and members of the Classes justifiably relied on Hain's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Hain.

83.     As a direct and proximate result of Hain's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

84.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
### *(on behalf of the Classes)*

85.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-55, as though fully set forth herein.

86.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Hain for negligent misrepresentation.

87.     Hain marketed the Products in a manner indicating that the Products were and are organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Hain has made misrepresentations about the Products.

88.     Hain's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

89.     At all relevant times when such misrepresentations were made, Hain knew or had been negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Hain has no reasonable grounds for believing its misrepresentations were not false and misleading.

90.     Hain intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the

23

Products' packaging by Hain, as well as its advertising, marketing, and labeling of the Products as organic, natural, and safe for consumption by infants and young children.

91.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Hain's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

92.     Therefore, as a direct and proximate result of Hain's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

93.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**FIFTH CAUSE OF ACTION**
**Intentional Misrepresentation**
*(on behalf of the Classes)*

94.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-55, as though fully set forth herein.

95.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Hain for intentional misrepresentation.

96.     Hain marketed the Products in a manner indicating that the Products were and are organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Hain has made misrepresentations about the Products.

24

97.     Hain's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

98.     At all relevant times when such misrepresentations were made, Hain knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

99.     Hain intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Hain, as well as its advertising, marketing, and labeling of the Products as organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children.

100.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Hain's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

101.     Therefore, as a direct and proximate result of Hain's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

102.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SIXTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution
### *(on behalf of the Classes)*

103.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-55, as though fully set forth herein.

104.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Hain for quasi contract, unjust enrichment, and restitution.

105.    As alleged herein, Hain has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Hain. Plaintiffs and members of the Classes therefore have been induced by Hain's misleading and deceptive representations about the Products, and paid more money to Hain for the Products than they otherwise would and/or should have paid.

106.    Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Hain has retained monies paid to them by Plaintiffs and members of the Classes.

107.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes—i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Hain.

108.    Therefore, it is inequitable and unjust for Hain to retain the profit, benefit, or compensation referred upon it without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

109.    As a direct and proximate result of Hain's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Hain from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CAUSE OF ACTION**
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201 *et seq.***
***(On behalf of Plaintiff Lisa Gray and the Florida Subclass)***

110.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-55, as if fully set forth herein.

111.    Plaintiff Gray brings this claim individually and on behalf of the members of the proposed Florida Subclass against Hain for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

112.    Plaintiff Gray and members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Hain are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

113.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

114.    For the reasons discussed herein, Defendant Hain violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Hain's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead

members of the public, including Plaintiff Gray and members of the Florida Subclass and other consumers acting reasonably under the circumstances, to their detriment.

115.    At all times mentioned herein, Hain engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered or sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

116.    Hain repeatedly advertised on the labels for its Products, on its websites, and through national advertising campaigns, among other things, that its Products were organic, free from artificial flavors, colors and preservatives, and safe for consumption by infants and young children. Hain failed to disclose the material information that its Products contained unsafe levels of toxic heavy metals.

117.    Hain's representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Hain's Products without knowing that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Hain's unfair and deceptive acts or practices, Plaintiff Gray and members of the Florida Subclass suffered damages by purchasing Hain's Products because they would not have purchased Hain's Products had they known the truth, that the Products contain, or may contain, levels of toxic heavy metals.

118.    Hain's deceptive trade practices caused Plaintiff Gray and members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or diminishment of value of the Products they purchased, which allowed Hain to profit at the expense of Plaintiff Gray and members of the Florida Subclass. The injuries Plaintiff Gray and members of the Florida Subclass suffered were to legally protected interests. The gravity of the harm of

Defendant Hain's actions is significant and there is no corresponding benefit to consumers of such conduct.

119.    Plaintiff Gray and members of the Florida Subclass seek relief for the injuries they have suffered as a result of Hain's unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Class and Subclasses defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.    A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

C.    An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.    An order directing Defendant to engage in a corrective advertising campaign;

F.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims presented herein so triable.

Dated: March 24, 2021                    **CARLSON LYNCH LLP**

                                By:  */s/ Edwin J. Kilpela*
                                     Edwin J. Kilpela
                                     1133 Penn Ave., 5th Floor
                                     Pittsburgh, PA 15222
                                     Tel.:    412-322-9243
                                     Fax:     412-231-0246
                                     ekilpela@carlsonlynch.com

                                     **CARLSON LYNCH LLP**
                                     Todd D. Carpenter
                                     Scott G. Braden
                                     1350 Columbia St., Ste. 603
                                     San Diego, CA 92101
                                     Tel.:    619-762-1900
                                     Fax:     619-756-6991
                                     tcarpenter@carlsonlynch.com
                                     sbraden@carlsonlynch.com

                                     **LEEDS BROWN LAW, P.C.**
                                     Jeffrey K. Brown
                                     Michael A. Tompkins
                                     Brett R. Cohen
                                     One Old Country Road, Suite 347
                                     Carle Place, NY 11514
                                     Tel:     516-873-9550
                                     jbrownl@leedsbrownlaw.com
                                     mtompkins@leedsbrownlaw.com
                                     bcohen@leedsbrownlaw.com

                                     *Attorneys for Plaintiffs*